(181 P.3d 570)
No. 97,436

DILLON COMPANIES, INC., d/b/a DILLON'S # 55 *Appellee,* v.
MARVIN DAVIS, a/k/a MARVIN B. DAVIS, JR., *Appellant.*

Opinion filed
April 18, 2008.

*Marvin B. Davis, Jr.,* appellant pro se.

*Natasha Riffel-Kuhlmann,* of Newman, Reynolds & Riffel, P.A., of Wichita, for appellee.

Before McANANY, P.J., ELLIOTT and LEBEN, JJ.

*Per Curiam:* Marvin Davis wrote a bad check for $50 at a Dillon's grocery store in Wichita, and Dillon Companies, Inc. obtained a judgment against him in 1991 for $405. The judgment was left fully unpaid until 2004, when Dillon's successfully garnished $123.28 from Davis' accounts at the El Dorado Correctional Facility, where Davis is an inmate.

Davis challenges both the garnishment and the original judgment against him. He argues that he was not properly served with the petition in 1991 and that the garnishment wrongly took $51.75 of his wages—called "incentive pay" in the correctional facility—with a "non-wage" garnishment. But Davis fails to offer any actual evidence that he wasn't properly served, and ordinary wages lose their status as earnings when they are deposited into a bank account. A bank account is not functionally different when its equivalent is provided to an inmate through a correctional-facility savings account. As such, we affirm the judgment of the district court.

*Davis Has Not Shown that the Original 1991 Judgment Against Him Was Based on Improper Service.*

Davis' appeal of the original entry of judgment in 1991 rests on his claim that he was never properly served with a summons and petition. Proper service of process is one of the prerequisites to a court exercising jurisdiction over a party. *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 130, 734 P.2d 1125 (1987). A judgment entered without proper service is void, *Medina v. American Family Mut. Ins. Co.*, 29 Kan. App. 2d 805, 809, 32 P.3d 205 (2001), *rev. denied* 273 Kan. 1036 (2002), and a void judgment may be set aside at any time. *In re Adoption of J.H.G.*, 254 Kan. 780, 791, 869 P.2d 640 (1994).

The district court found that service was proper. The court file contains a return of service by a Sedgwick County deputy sheriff stating that the summons and petition were left "at the usual place of residence of the defendant," 1747 N. Volutsia in Wichita, and that a notice of the delivery was also mailed first-class to that address. If that was in fact Davis' usual place of residence at that time, the service complied with K.S.A. 60-303(d)(1), which allows service by posting at a defendant's residence accompanied by a notice mailed first-class.

Davis contends that he lived with two roommates on Webb Street in December 1991, not at 1747 N. Volutsia; he also says he was arrested sometime that month and spent the rest of it in jail. But his allegations are not accompanied by an affidavit or any documentation showing where he was residing in December 1991. The sheriff's return said that 1747 N. Volutsia was his usual place of residence, and it has long been presumed in Kansas law that a sheriff's return is accurate. See *Supply Co. v. Whan*, 111 Kan. 687, 688, 208 Pac. 563 (1922); *Ingraham v. McGraw*, 3 Kan. 521, 522 (1866); *Stunkle v. Holland*, 4 Kan. App. 478, 481, 46 Pac. 416 (1896). Although this is a rebuttable presumption, Davis did not offer anything of evidentiary value to do so.

The district court held a telephone conference hearing at which Davis was heard on this issue. No transcript or record of that conference was provided on appeal. An appellant has the duty to des-

ignate a record sufficient to establish the error claimed. Without such a record, the claim fails. *City of Mission Hills v. Sexton*, 284 Kan. 414, 435, 160 P.3d 812 (2007). Even if no transcript was made, our appellate rules allow a party to include a record of it. See Kansas Supreme Court Rules 3.04 (2007 Kan. Ct. R. Annot. 25).

We find nothing of evidentiary value in the record to rebut the statement in the sheriff's return that Davis' usual place of residence was 1747 N. Volutsia in December 1991. Davis has attempted to do so with an attachment to his brief that purports to show that he did not receive a letter sent to the Volutsia address by restricted mail at some point. The materials are not self-explanatory; one copy of the envelope seems to bear a date of September 1991, while the other seems to bear a postmark from 2005. Even if Davis had mail sent restricted to the Volutsia address in September 1991 and that mail was returned "unclaimed," as the exhibit suggests, that would only prove that no one went to the post office to claim the envelope. It certainly does not prove where Davis resided in December 1991. In any event, documents attached to a brief but not otherwise found in the record on appeal may not be considered. *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 895, 166 P.3d 1047 (2007). The district court's ruling is supported by the sheriff's return, the only item of evidentiary value on this point that can be found in the record.

*Davis' Incentive Pay from the Correctional Facility Can Be Garnished with a Non-Wage Garnishment Once It Is Deposited into His Prison Account.*

Perhaps because different exemptions apply to the garnishment of wages than apply to the garnishment of other property, separate statutes apply and different garnishment orders are used for each type. Compare K.S.A. 61-3505 (non-wage garnishment) with K.S.A. 61-3507 (wage garnishment). Dillon's issued a non-wage garnishment, and Davis contends that Dillon's was wrongly given $51.75 of his wages in response.

Kansas prison inmates may receive "incentive pay" for work performed while in custody. The money received is then kept for the

inmate in a prison account. Prison rules require that 10 percent of earnings be put into a savings account, which may not be used by the inmate during his stay in prison but which may be garnished. The remainder goes into another account, essentially the equivalent of a checking account. It may be used for approved purposes at the prison, but it is also subject to garnishment under prison rules.

Davis contends that funds paid to him as incentive pay may not be attached with a non-wage garnishment even after they have been deposited into the inmate's prison account. But the Kansas federal court has held that regular wages lose their partial exemption from garnishment after they are deposited into a bank account. *In re Adcock*, 264 B.R. 708 (D. Kan. 2000); *In re Doughman*, 263 B.R. 905 (Bankr. D. Kan. 1999); but see *In re Resler*, 282 B.R. 246 (Bankr. D. Kan. 2002) (finding a limited exemption for wages deposited in bank account without comingling with other funds). We agree with *Adcock*, and we find no distinction when the funds are in an inmate's savings account rather than a traditional bank account.

K.S.A. 61-3505(b)(1) allows garnishment of "[a]ll . . . funds . . . belonging to . . . the judgment debtor." Some statutes protect Social Security benefits and workers compensation benefits, even after they are placed into bank accounts. See 42 U.S.C. § 407(a) (2000) (providing Social Security benefits are not subject to garnishment) and K.S.A. 44-514(a) (providing that no claim shall be allowed against workers compensation "paid" by garnishment or other execution). See generally *Decker & Mattison Co. v. Wilson*, 273 Kan. 402, 44 P.3d 341 (2002) (placement of workers compensation award into bank certificate of deposit did not eliminate protection from garnishment); *E.W. v. Hall*, 260 Kan. 99, 917 P.2d 854 (1996) (same for Social Security benefits placed into bank certificate of deposit). But there is no similar protection for regular wages.

K.S.A. 61-3507(b) is the separate provision governing wage garnishments. It attaches "the nonexempt portion of the judgment debtor's earnings *for all pay periods which end while the order is in effect*." (Emphasis added.) The sums at issue here had already

been paid to Davis and placed into his prison account. The situation is thus not covered by the wage-garnishment statute, since it applies expressly only to wages that have not yet been paid. Because the wage-garnishment statute is not applicable and Dillon's issued a non-wage garnishment, the matter is covered by K.S.A. 61-3505(b)(1), which we have already noted allows garnishment of all funds belonging to the judgment debtor, except when another statute provides for a continuing exemption.

The district court properly denied Davis' objection to the garnishment.

*Other Issues Raised by the Parties on Appeal Do Not Affect the Merits of the Case.*

Davis raises one additional issue: that the original 1991 judgment should be void because it was signed by the judge using a signature stamp. This argument was not raised in the district court. Issues generally may not be raised for the first time on appeal, *Iron Horse Auto, Inc. v. Lititz Mut. Ins.* 283 Kan. 834, 845, 156 P.3d 1221 (2007), and we find no exception to that rule applicable here. Because the issue was not raised in the district court, we do not have the benefit of guidance from the district court about what circumstances may have led to the use of a signature stamp in this case. We therefore decline to address this issue.

Dillon's argued that Davis had not timely requested a hearing on his objection to the garnishment and that Davis had not timely appealed the district court's judgment. But there is no record that a notice of his right to object to the garnishment was sent to him as required by K.S.A. 61-3508(a). Instead, it appears that Dillon's sent the notice to the correctional facility, and the correctional facility then told Davis about it. We choose not to reach the merits of whether that's proper notice under K.S.A. 61-3508(a) since Davis' objection to the garnishment fails on the merits anyway.

Dillon's separately argues that Davis did not file his appeal on time. This argument also requires that we look at the notices provided to Davis. The district court denied Davis' motion for relief from the 1991 judgment and entered its final judgment on July 29, 2005. But the record does not show any notice to Davis of this

ruling until November 22, 2005, when the district judge wrote to Davis telling him of the ruling. Davis filed for reconsideration within 10 days; that request was denied on June 6, 2006. The district court mailed its denial of reconsideration to Davis. Under K.S.A. 60-206(a) and 60-2103(a), he then had 30 days plus 3 for mailing to file his appeal, making his deadline July 10, 2006. Davis timely filed the appeal on July 7, 2006.

The judgment of the district court is affirmed.